## Dixon et al. v. Gilberton Borough School District et al.

*C. E. Berger* and *Richard W. Ledwith,* for plaintiffs.

*Kilker & Kilker, H. O. Bechtel,* and *W. K. Woodbury,* for defendants.

HOUCK, P. J., July 25, 1938.—Plaintiffs and defendant Sheafers are the owners of land in the Borough of Gilberton. The bill is against the school directors of said borough and the collector of school taxes. In it, plaintiffs allege that they received notice from the tax collector on May 10, 1938, that, taxes on said land being delinquent, she, as tax collector, intended to levy the amount due by distress and sale of plaintiffs' goods and chattels whereever they might be found unless payment was made on or before May 14, 1938; that plaintiffs are nonresidents of Schuylkill County and do not own any goods or chattels therein; that the tax collector intended to levy on their goods without the borders of Schuylkill County; that the owners of the land, on January 18, 1932, obtained a judg-

ment against the School District of the Borough of Gilberton for $156,893.10, that being the amount found to be due plaintiffs by the school district as a refund of excess taxes upon the said premises paid to the said school district for the years 1922, 1923, and 1924; that this judgment, with interest, as of October 1, 1937, amounts to $210,576.68; that a mandamus execution issued against said school district on February 19, 1934, to collect this judgment; that no part of the judgment or interest has been paid; that this judgment is a legal set-off for credit against any school taxes assessed by said school district subsequent to the entry of said judgment, wherefore no school taxes for the year 1937 are due by plaintiffs to said school district; and that the proposed levy and sale of plaintiffs' goods and chattels without the borders of Schuylkill County are contrary to law. Plaintiffs pray for an injunction restraining defendants from collecting any school taxes for the year 1937, from levying on the goods and chattels of plaintiffs and from levying on the goods and chattels of plaintiffs being without the borders of Schuylkill County. A preliminary injunction was issued and continued after hearing. Defendants filed an answer averring that on May 12, 1938, Arthur W. Sheafer, Henry Sheafer, and Clinton W. Sheafer, three of the defendants, paid the tax collector $5,000 as their proportionate part of the amount of taxes due upon the lands in question; that the tax collector intended to make levy of the amount unpaid by distress and sale of the goods and chattels of plaintiffs wherever they might have been found in the Commonwealth of Pennsylvania; that the judgment for excess taxes is not a legal set-off or credit against school taxes for 1937; and that the proposed levy and sale of plaintiffs' goods and chattels are not contrary to law. The issues are whether there is any legal authority in the tax collector to exercise any statutory remedy for the collection of the tax; whether collection by distress on goods and chattels without the borders of Schuylkill County is authorized by law;

whether the tax sought to be collected has already been paid through the application of the right of set-off or credit; and whether plaintiffs are estopped from claiming equitable relief. Final hearing was had on bill and answer. . . .

## Discussion

The first question which presents itself is whether the defendant tax collector has any authority now to enforce payment of the taxes in question. If she has no such authority, this is decisive of the controversy and other questions suggested by the pleadings and the evidence need not be determined.

In the first place, plaintiffs requested a finding of fact to the effect that the tax collector's warrant is dated September 30, 1937, and, on this suggested finding, contend that she was not authorized to make any demand for payment on September 27, 1937, and since this is the only demand other than the demand of May 9, 1938, no demand has been made allowing plaintiffs 30 days in which to make payment. The requested finding has not been made because the only evidence as to the date of the warrant is the warrant itself. This was produced, identified, and marked exhibit no. 5. It was offered but the offer was immediately withdrawn. Consequently, the exhibit is not in evidence and the question of the lack of a 30-day notice from the tax collector is not before us.

In addition to the foregoing, plaintiffs contend that the tax collector now lacks authority to collect the taxes because she made a return of these unpaid taxes to the county commissioners pursuant to the Act of May 29, 1931, P. L. 280, 72 PS §5971a. This brings us to the crux of the case. The statute makes it the duty of each tax collector to make a return to the county commissioners of such taxes which are assessed and levied on seated lands and which are unpaid, and for which no liens have been filed, not later than the first Monday of May in the year succeeding the year in which the respective taxes

were assessed and levied. This return was made by the tax collector on May 2, 1938, prior to her demand of May 9, 1938. Upon such return it becomes the duty of the commissioners to enter it in a tax return docket and the return and entry become a lien on the land. Section 3 of the act provides that the county commissioners shall certify the return to the county treasurer who is authorized and empowered to receive and collect the taxes and to sell the seated lands if necessary. It is the county treasurer's duty to distribute the taxes paid to him to the parties entitled to receive the same and to certify the collections made by him to the county commissioners for entry and satisfaction upon the tax return docket. Section 6 provides:

"After such return of taxes shall have been made in accordance with the provisions hereof, responsibility of the tax collector or receiver of taxes for the collection of the taxes so returned shall cease. On making such return, the tax collector or receiver of taxes shall be entitled to exoneration from the taxes so returned on the settlement of his accounts. On any unpaid taxes returned to the county commissioners, the tax collector or receiver of taxes shall be entitled to receive a commission of two per centum (2%) from the taxing district for which such tax is returned when the tax is paid by the county treasurer to the proper taxing district; provided, that, where the tax collector is paid on a salary basis, he shall not be entitled to receive this commission of two per centum (2%)."

Section 21 of the act provides that no tax collector shall make any return of taxes as provided in the statute if the taxing authorities notify him in writing that returns shall not be made but that delinquent taxes are to be collected by the filing of liens in the office of the prothonotary.

The meaning of the Act of 1931 is plain. The various sections to which we have referred indicate clearly that when the taxes are returned by the tax collector, not only

does his responsibility cease, but his power to collect the taxes ceases as well. The act specifically authorizes and empowers the county treasurer to collect such taxes. The lien is discharged upon certificate from the county treasurer to the county commissioners. The tax collector is exonerated from the collection of the tax. Unless he is on a salary basis, he is entitled to a commission, not when the tax is paid to him, but when the tax is paid by the county treasurer to the taxing district. The commission allowed the tax collector upon the payment of such taxes is for the work involved in making the returns: Norristown Borough School Dist. v. Hoffman, 24 D. & C. 56, 61.

Defendants contend that the Act of 1931 merely discharges the responsibility of the tax collector but does not interfere with his authority to collect the tax even after it has been returned. They refer to section 559 of the School Code of May 18, 1911, P. L. 309, as amended by the Act of July 1, 1937, P. L. 2577. This section makes it the duty of the tax collector to collect the taxes set forth in his duplicate and to account for and to pay over to the school district the total amount of school taxes appearing upon the duplicate "less such amount as he may be exonerated from by the board of school directors, and also less such an amount of unpaid taxes as is assessed and levied upon real property in said school district upon which there is no personal property out of which such school taxes might have been or could have been collected." The amendatory portion then proceeds, "When a collector of school taxes has heretofore been or shall hereafter be exonerated from the collection of certain taxes, such action by the board of school directors shall not in any way have the effect of discharging or limiting the liability of the taxable, but all methods of enforcing collection of taxes shall continue as though no exception had been made." Strictly speaking, this amendment applies to exonerations granted by the school board; the exoneration we are considering results from operation of law. Furthermore, all this amendment accomplishes is to prevent

exoneration of the taxable, which exoneration would be unconstitutional (Exoneration from Payment of School Taxes, 19 D. & C. 213), and it retains all methods of enforcing collection of the unpaid taxes. As already demonstrated, the method of enforcing the payment of these particular taxes is now by county treasurer's sale of the seated land and, of course, there is no impairment of this method of collecting the tax. Defendants further argue that the school district will be seriously crippled if payment of these taxes may be deferred until the treasurer's sale. This may be so, but it is a question for the legislature, not for the courts. Besides, the school district could have availed itself of the remedy provided by section 21 of the Act of 1931. It could have notified the tax collector not to return the unpaid taxes but to proceed to the collection by filing liens in the office of the prothonotary. Our conclusion is that since the tax collector returned the delinquent taxes pursuant to the provisions of the Act of 1931, she has lost the power to collect them and she may not proceed by distress or in any other fashion to collect the taxes.

In view of what has been said, it is unnecessary to determine whether the tax collector, if still authorized to collect the taxes, could collect them by levying on plaintiffs' personal property without the borders of Schuylkill County. Neither is it necessary nor desirable in this proceeding to determine whether by virtue of the Acts of July 12, 1935, P. L. 674, and of July 15, 1935, P. L. 1007, 72 PS §5020-518, the taxes for 1937 have been paid, since the school district is indebted to the plaintiff owners for excess taxes paid in 1922-23-24 in an amount greatly in excess of the taxes assessed against plaintiffs for 1937. Even if the excess tax payments do constitute a set-off or credit, we would not be warranted in setting off the credit against the entire 1937 assessment for, obviously, if this were done, the school district could not function. A reasonable amount to be set off would have to be determined, and the evidence before us is not sufficient for this

purpose. It is questionable whether plaintiffs have not lost their right to claim this credit against 1937 taxes by laches or waiver, by requesting the privilege of paying their 1937 taxes in instalments without advising the school district that they took the position that they did not owe any taxes for 1937 by virtue of the set-off. The district incurred expenses in the belief that these taxes would be paid. Plaintiffs did nothing to indicate a contrary intention. Hence, we would be warranted, if deciding the point, in refusing to declare plaintiffs relieved from taxes for 1937: Wilson et ux. v. Philadelphia School Dist. et al., 328 Pa. 225, 243. At all events, in this case we express no opinion concerning the matter of set-off under the acts of 1935. All that we decide is that the tax collector has lost her power to collect. The doctrine of clean hands, urged by defendants, is not involved in the case. The case concerns the narrow question of the tax collector's power under the law. She may not do what the law forbids irrespective of other considerations.

The injunction against Arthur W. Sheafer, Henry Sheafer, Clinton W. Sheafer, and Lesley G. Sheafer, defendants, was dissolved at the preliminary hearing. They, of course, are not involved in this proceeding. Neither has anything been charged against defendant school directors. There is no basis for any injunction against them. The tax collector will be restrained from collecting the taxes since she has lost her power and authority to do so. . . .

### Decree nisi

And now, July 25, 1938, upon consideration of the foregoing case by the chancellor, it is ordered, adjudged, and decreed nisi as follows:

1. Defendant, Ruth Matthews, is hereby perpetually restrained from collecting from plaintiffs, or any of them, any school taxes for the year 1937, for the School District of the Borough of Gilberton.

2. The bill is dismissed and the preliminary injunction dissolved as to the School District of the Borough of Gilberton, Manetho Williams, Dr. James Flannery, Francis P. Brennan, Joseph Miller, and M. J. Kerrigan, members of the board of school directors of said school district, and as to Arthur W. Sheafer, Henry Sheafer, Clinton W. Sheafer, and Lesley G. Sheafer.

3. Defendant Ruth Matthews, shall pay the costs.

4. The prothonotary shall give notice of the entry of this decree nisi to the parties, and, if no exceptions are filed by any party within 10 days, he shall enter this decree as the final decree.